**Decker**
v.
**CNA Insurance Co.**
*[Cite as 4 AOA 466]*

*Case No. 89-P-2106*
*Portage County, (11th)*
*Decided June 1, 1990*

*Ralph Oates, 217 East Main Street, Kent, Ohio44240, for Plaintiff-Appellant.*

*Gary L. Nicholson, John B. Robertson, Bulkley Building, Sixth Floor, 1501 Euclid Avenue, Cleveland, Ohio 44114, for Defendants-Appellees.*

FORD, J.

This is an accelerated calendar case.

On May 2, 1987, Robert L. Decker was struck and killed by an automobile while jogging in Portage County, Ohio. The automobile was driven by Christopher R. Albert who, at the time of the accident, was insured by Federal Kemper Insurance Company, under a policy of insurance which carried a bodily injury liability limit of $25,000 for each person/$50,000 each occurrence.

The decedent had been employed by appellee, Envirodyne Industries. Envirodyne had provided the decedent with a company car, as well as insurance on the car, through the appellee, CNA Insurance Company (appellee).

Appellant, Laurie Decker, the executrix of decedent's estate, accepted $25,000 in full settlement from Federal Kemper Insurance Company. Further, appellant endeavored to make a claim against the underinsured provisions of Envirodyne's insurance policy with appellee. When appellee refused to recognize the claim, appellant commenced a declaratory judgment, on September 21, 1988, requesting a determination as to whether the decedent was or was not an "insured", pursuant to the "uninsured/underinsured motorist" provisions contained in the appellee's policy.

Under the terms of the uninsured motorist policy drafted by appellee, the following persons/entities were insured under the policy:

"D. WHO IS INSURED

"1. *You* or any *family member*.

"2. Anyone else *occupying* a covered *auto* or a temporary substitute for a covered *auto*. The covered *auto* must be out of service because of breakdown, repair, servicing, loss or destruction.

"3. Anyone for damages he is entitled to recover because of *bodily injury* sustained by *another insured*." (Emphasis in original).

Appellee's policy contains a provisions defining certain terms of art contained in the policy. "You" or "your" is defined by the policy to be "the person or organization shown as the named insured * * *." The named insured in the policy in question was Envirodyne. The policy further defines "family members" as "a person related to *you* by blood, marriage or adaption who is a resident of your household * * *." The uninsured motorist provision does not contain any special definitional wording which would limit the applicability of the policy to persons or family members in the scope of their employment. Instead, it would appear as if appellee utilized the same form for both corporate and personal automobile insurance policies.

Appellee, along with Envirodyne, filed a joint motion for summary judgment on April 3, 1989. Attached to this motion for summary judgment was an affidavit from an officer of Envirodyne which stated that it was not the intent of either Envirodyne or appellee that the decedent be covered for the accident at issue. On July 11, 1989, appellant filed a brief in support of Declaratory Judgment and in Opposition to Summary Judgment. This brief did not dispute appellees' affidavit; instead, the brief asserted that the decedent was covered by the insurance company as a matter of law.

After oral arguments on the motion for summary judgment, the trial court, on July 28, 1989 issued an order stating:

"The Court finds that neither the Plaintiff, the Decedent nor the Decedent's Estate are insured under the Defendant's Insurance Policy, and that there is no dispute of material fact that the decedent was not in the scope of his employment at the time of his injury and death and was not operating a company owned vehicle."

Appellant timely filed notice of appeal from this order and raises the following assignment of error.

"The trial court erred in sustaining the defendants' motion for summary judgment."

Prior to any consideration of the merits of appellant's assignment, however, this court must first consider the threshold issue of whether appellant's assignment is properly cognizable by this court. Appellees argue that the grant of summary judgment is proper because appellant failed to contradict, in any way, the allegations in their motion.

"* * *When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." Civ. R. 56(E). Appellees' argument is traditionally very compelling and would prevail in the case *sub judice*

except that it assumes that appellant relied solely on a paper refutation of appellees' contentions. However, appellant also provided the court with the insurance policy in question. The provisions of the insurance policy itself contradict appellees' assertions and demonstrate genuine issues for trial. This court is, therefore, capable of considering appellant's argument.

The underlying issue in this case, which is the construction of an ambiguous insurance provisions, has been the subject of considerable judicial scrutiny of late. Several courts, including this one, have addressed the question of who the insured party is in policies of uninsured/underinsured motorist coverage, where the form in question is used for both corporate and personal use. The interpretive difficulty in construing these provisions (which are all very similar to that in the case *sub judice*) is in construing phrases such as "you" or "a family member". The dilemma that one reaches when interpreting these provisions was set forth in *Aetna Casualty and Surety Co. v. Borden, Inc.* (Sept. 15, 1989), Lake App. No. 88-L-13-163, unreported, at 8, as follows:

"* * *'[Y]ou,' in the quoted language, indicates the named insured, the corporation; [a family member] becomes a nonsensical phrase when describing a relative of a corporation; a second possible interpretation of 'a relative' or 'you' could be 'an employee'. Thus, the court [is] faced with ambiguous language."

The starting point for the investigation of the question of whether decedent was covered by the appellee's insurance policy is *King v. Nationwide Ins. Co.* (1988), 35 Ohio St. 3d 208. In *King*, the Ohio Supreme Court heard a case in which the named insured was a community action agency and the injured party was one of the agency's employees. This employee was driving a co-worker's car (rather than the agency's) in the scope of his employment. The policy in question defined "you" exclusively in terms of the agency and also contained language defining "family member" in the same manner as the policy in the case *sub judice*.

At trial, the insurance company argued that the word "relatives" in the form was a nullity, resulting solely from the cross pollination of insurance forms for individuals and business entities. The Ohio Supreme Court however, held that "[w]here provisions of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *Id.* at

the syllabus; *Faruque v. Provident Life & Acc. Ins. Co.* (1987), 31 Ohio St. 3d 34, at the syllabus. The *King* court noted that interpreting phrases such as "[r]elatives living in your household" as relatives of the corporation was "manifestly absurd." *King, supra* at 212. The relatives phrase could also mean 'the employees of the corporation', 'the relatives of the employees of the corporation', or simply be construed as a nullity. Consequently, the court held that the phrase "a relative living in your household", in the business entity context, was inherently ambiguous and must be construed in such a way as to include the insured.

Five months after the release of *King*, the Ninth District Court of Appeals, in *Simon v. Midwestern Indemnity Co.* (Aug. 31, 1988), Lorain App. No. 4346, unreported, had occasion to construe an insurance policy similar to the one found in *King*. In *Simon*, the injured party, not within the scope of his employment, was struck and killed by an uninsured motorist. The decedent's employers had taken out uninsured motorist insurance, with the company designated as the named insured and with provisions in the policy extending coverage to the 'relatives' of the named insured. The *Simon* court, applying *King*, held that the decedent was covered by the company's uninsured motorist policy, even though he had not been within the scope of his employment at the time of the accident. Since "[t]he automotive policy in controversy [did] not specifically provide that 'insureds' were only covered if they [were] acting within the scope of their employment at the time they [were] injured[,]" the *Simon* court found the trial court's construction of the policy in favor of the insurers to be clearly contrary to law. *Simon, supra*, at 5.

This court also had occasion to a case involving and uninsured motorist policy similar to the case *sub judice*, in *Aetna, supra*. In *Aetna*, the company in question, Carroll Glass, was designated as the named insured on the insurance policy, a policy which also contained language covering the "relatives of the same household". The daughter of one of the employees of Carroll Glass, who was not an employee of the company, was injured while driving in a car, not owned by the company and outside of any company business.

This court, examining the insurance policy in *Aetna*, and applying the logic of *King* and *Simon*, stated that the employee of Carroll Glass was covered under the provisions of the uninsured motorists policy and, "as [the insurer] has

seen fit to amplify its coverage via the residential relative clause, [the daughter] is also covered under the auspices of the policy." *Aetna, supra,* at 7-8. Further, in *Aetna,* this court took exception to Professor Widiss's treatise, Widiss, Uninsured and Underinsured Motorists Insurance (1985), 60, Section 4.4, quoted in *Aetna,* at 10. Widiss had opined that courts tend to limit analysis such as that found in *King* to situations in which the employee was engaged in the scope of his or her employment. This court noted, however, that Ohio law, as set forth in *King,* required that ambiguous provisions were to be construed liberally in favor of the insured. Acceptance of Widiss's position, therefore, would require the adoption of a provision which did not encompass the full scope of persons who could be insured under the policy. Such a reading, the court felt, would scarcely comport with the liberal construction of the insurance provisions mandated by *King.*

In conclusion this court, in *Aetna,* observed:

"A reading of the insurance policy in the way advocated by the trial court may well extend appellant's liability beyond what [the insurer] had originally intended. However, appellant had the opportunity, when drafting the policy provisions, to formulate specific exclusions from coverage. 'Where exceptions, qualifications or exemptions are introduced into an insurance contract, a general presumption arises to the effect that that which is not clearly excluded from the operation of such contract is included in the operation thereof.' *Home Indemnity Co.* v. *Plymouth* (1945), 146 Ohio St. 96, paragraph two of the syllabus. (Further citations omitted). Having drafted the insurance policy provisions and dictated its terms to its insureds, [the insurer] must now accept the consequences of its own overinclusive drafting." *Aetna, supra,* at 11-12.

Appellees argue that the language of their policy does not cause the ambiguities inherent in *King* and *Aettion of the Troy Model Laundry, supra,* case, in which the Sixth District Court of Appeals held that a pedestrian, not in the scope of his employment was not covered by his company's uninsured motorist policy, is in contravention not only of this court's holding in *Aetna,* but also is contrary to *King.* As the *Troy Model Laundry* case is not binding on this court, and as it fails to apply *King* and its progeny, we decline to follow the case here.

Appellees further contend that appellant should be precluded from coverage because the decedent was outside the scope of his employment at the time of the accident. This argument is without merit for several reasons. First, examination of the insurance policy in question indicates that nowhere in the policy is there any restriction which limits coverage to persons within the scope of their employment. As noted, it has long been a governing rule of contractual interpretation that what "is not clearly excluded from the operation of such contract is included in the operation thereof." *Home Indemnity Co., supra,* at the second paragraph of the syllabus.

Moreover, appellees point to no case law which indicates that underinsured motorist coverage is only available to persons within the scope of their employment. In fact, in *Simon,* the ninth district, construing an insurance policy remarkably like the one at bar, found that the employee was protected by the uninsured motorist protections of his company's policy, despite not being within the scope of his employment at the time of his death. Similarly, this court, in *Aetna,* extended the ambit of the policy in question to cover a woman who was not only not within the scope of her employment, but was not even an employee of the corporation at all. Nor does the fact that the decedent was a pedestrian bar him from the protection of the insurance policy. Ohio law is replete with instances where courts have found a litigant to be entitled to benefits, arising from uninsured/underinsured motorist insurance, despite having been pedestrians at the time of the accident. See, *e.g., Dues* v. *Hodge* (1988), 36 Ohio St. 3d 46; *Shear* v. *West American Ins. Co.* (1984), 11 Ohio St. 3d 162.

Appellant's assignment has merit.

Therefore, for the reasons set forth in this opinion, the judgment of the trial court is reversed and this case remanded for further proceedings consistent with this opinion.

*Judgment reversed and*
*cause remanded.*

CHRISTLEY, P.J., concurs with concurring opinion.
MAHONEY, J., concurs.

CHRISTLEY, P.J.

I concur with the well written opinion of the majority. That opinion comes to the only legal conclusion possible despite the absurdity of that conclusion from a common sense viewpoint.

Nevertheless, this court is duty bound to follow the legal principles, precepts and case law

presently existing in Ohio until such time as the legislature or the Ohio Supreme Court sees fit to change those guidelines.