## MILLER

v.

## THE HARTFORD, a.k.a. Hartford Casualty Insurance Company, et al.

2001-Ohio-4370.]

Court of Common Pleas of Ohio,
Lake County.

No. 00CV001234.

Decided June 14, 2001.

Ralph Buss, for plaintiff.

David L. Lester, for defendant Hartford Casualty Insurance Company.

Thomas W. Wright and Dennis R. Fogarty, for Cincinnati Insurance Companies.

---

EUGENE A. LUCCI, Judge.

{¶ 1} This matter came on to be heard on the following:

{¶ 2} Defendant Hartford Casualty Insurance Company's motion for summary judgment, filed February 20, 2001;

{¶ 3} Plaintiff's brief in opposition to Hartford's motion for summary judgment and plaintiff's cross-motion for partial summary judgment, filed March 19, 2001;

{¶ 4} Defendant Hartford's reply brief in support of its motion for summary judgment and defendant Hartford's brief in opposition to plaintiff's [cross-]motion for [partial] summary judgment, filed April 19, 2001;

{¶ 5} Plaintiff's brief in reply to defendant Hartford's brief in opposition to plaintiff's cross-motion for partial summary judgment, filed May 3, 2001; and

{¶ 6} Defendant Hartford's additional reply brief in support of its motion for summary judgment and in opposition to plaintiff's [cross-]motion for [partial] summary judgment, filed May 22, 2001.

{¶ 7} Defendant Hartford's supplemental authority instanter, filed June 13, 2001.

{¶ 8} For the following reasons, defendant Hartford's motion for summary judgment is not well taken and is hereby denied, and plaintiff's cross-motion for partial summary judgment is well taken and is hereby granted.

## FACTS

{¶ 9} The following material facts are undisputed:

{¶ 10} On December 2, 1998, an individual named Kimberly Ivary drove her motor vehicle into a motorcycle that was owned and operated by plaintiff Eugene

Miller, causing severe injuries to plaintiff.[1]  On the date of the collision, plaintiff was employed by the Coe Manufacturing Company ("Coe").  Coe had previously purchased liability insurance from defendant Hartford, which issued policy number 45 UEN CR5122 and listed six corporations, including Coe, and one individual, named Fred Fields, as the named insureds under the policy.[2]

{¶ 11}  On May 19, 2000, defendant Hartford notified plaintiff's counsel in writing that Hartford had agreed to waive Hartford's subrogation rights against Kimberly Ivary, and on or about May 22, 2000, plaintiff accepted Ivary's offer of $293,000 in settlement of plaintiff's claims against her as the tortfeasor.[3]

{¶ 12}  Plaintiff filed this action against defendant Hartford on July 28, 2000, for declaratory judgment and judgment for breach of contract.  With respect to Hartford, plaintiff's complaint seeks to recover insurance proceeds under the underinsured motorist coverage of the insurance policy that listed Coe as one of the named insureds.  Specifically, plaintiff seeks in count one to establish underinsured motorist coverage under Hartford's policy pursuant to the Ohio Supreme Court's decision in *Scott–Pontzer v. Liberty Mut. Ins. Co.* (1999), 85 Ohio St.3d 660, 710 N.E.2d 1116, together with an award of compensatory damages under such coverage.  In count two, plaintiff seeks to establish a claim against Hartford for material breach of contract based on Hartford's "refusal to pay appropriate benefits to Plaintiff" under Hartford's policy.

---

1.  There is evidence in the certified medical records that suggests that plaintiff may have consumed alcohol—in the amount of "3 beers/2 shots"—at some unspecified time prior to the collision.  However, the certified medical records also appear to show that when he was tested at the hospital after the collision, plaintiff's blood-alcohol content was within legal limits.

2.  {¶ a}  The policy was originally issued with "The Coe Manufacturing Company" as the only named insured.  See Form HM 00 10 02 95.

   {¶ b}  The policy also contains an endorsement on Form IH 12 00 11 85 that lists the following six corporations and one individual as the "named insured": "The Coe Manufacturing Company," "Coe Manufacturing, Ltd.," "Fred Fields individually," "EOC Holdings, Inc.," "Albany International Industries, Inc.," "Coe Export, Inc.," and "FWF Investments, Inc."

   {¶ c}  There is no indication on the face of this "named insured" endorsement—or anywhere else in the policy—to indicate whether the endorsement became effective before or after the date of the plaintiff's injuries.  However, if the endorsement became effective before the date of plaintiff's injuries, then this court's analysis remains unchanged.  If the endorsement became effective after the date of plaintiff's injuries, then the only named insured on the date of the collision would have been "The Coe Manufacturing Company."  In that case, plaintiff's cross-motion for partial summary judgment should still be granted, and defendant Hartford's motion should still be denied, because the case would then fall squarely within the facts and rationale of the Supreme Court's *Scott–Pontzer* decision, cited below.

3.  See plaintiff's Exhibits 1 and 2 attached to plaintiff's brief in opposition to motion for summary judgment, filed March 19, 2001.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

{¶ 13} Defendant's motion for summary judgment, filed February 20, 2001, asserts that summary judgment should be awarded in its favor and against plaintiff because (A) the construction of the terms of an insurance policy is a question of law and not a question of fact; (B) the rule of law announced in the *Scott–Pontzer* decision *does not* apply in this case because Hartford's insurance policy—which, in addition to the various corporate insureds, also named one individual (Fred Fields) as an insured—does not contain the same ambiguity that was found in the insurance policy in *Scott–Pontzer*, and, therefore, plaintiff is not an insured under the policy; and (C) since plaintiff was not an insured under the policy, and since he was driving his own motorcycle at the time of the collision, he was not occupying a "covered auto" as that term is defined in the policy.[4]

{¶ 14} In support of its motion for summary judgment, defendant has attached the following documents to its brief in support:

{¶ 15} A copy of the summons and complaint[5] in this action, attached to the motion as defendant's exhibit A;

{¶ 16} A copy of excerpts from the deposition of Eugene William Miller, taken in *Eugene W. Miller v. Kimberly R. Ivary*, Lake County Common Pleas Case No. 99CV000872, attached to the motion as defendant's exhibit B;

{¶ 17} A copy of the Release of all Claims,[6] in which Eugene W. Miller released Kimberly R. Ivary and Motorists Mutual Insurance Company from all claims in exchange for payment of $287,000.00, attached to the motion as defendant's exhibit C;

{¶ 18} A copy of plaintiff's verified answers to Hartford's first set of interrogatories and requests for production of documents to plaintiff, attached to the motion as defendant's exhibit D; and

{¶ 19} An authenticated copy of the Hartford insurance policy, attached to the motion as defendant's exhibit E.

## PLAINTIFF'S BRIEF IN OPPOSITION

{¶ 20} In response to defendant's motion, plaintiff filed his brief in opposition, making the following arguments:

---

4. The policy defines a covered auto as "Only those 'autos' you own (and for Liability Coverage any 'trailer' you don't own while attached to power units you own). This includes those 'autos' you acquire the ownership of after the policy begins."

5. The complaint includes a copy of the Hartford insurance policy.

6. This document does not comport with the requirements of Civ.R. 56(C) and therefore cannot be considered by this court when deciding defendant's motion for summary judgment.

{¶ 21} The court must give the language of an insurance policy a reasonable construction in comporting with the intentions of the parties, and must construe the language—and any ambiguity—liberally in favor of the insured party and strictly against the insurer;

{¶ 22} The rule of law announced in the *Scott–Pontzer* decision *does* apply in this case because:

{¶ 23} As in the policy in *Scott–Pontzer*, when the Hartford policy defines "Who is an insured," the first definition is "**You.**" "You" refers to the seven named insureds in the endorsement contained in Form IH 12 00 11 85 of the Hartford policy. Coe is one of the seven named insureds. Since Coe is a corporation, it could not have been the intent of the parties for Hartford's policy to provide underinsured motorist coverage for Coe's non-living properties and/or assets.

{¶ 24} Also, R.C. 3937.18(A) requires that underinsured motorist coverage be "provided to *persons* insured under the policy for loss due to bodily injury * * * suffered by such persons." (Emphasis added.) Hence, Hartford's policy was intended to insure persons associated with and/or employed by Coe. In this, regard, "You" is subject to several reasonable interpretations. "You" could apply to Coe's employees, officers, directors, shareholders, representatives and agents, or to all or some of them.

{¶ 25} Because Hartford's policy is reasonably susceptible of more than one interpretation with regard to the term "You," this term must be construed strictly against Hartford and liberally in favor of plaintiff.

{¶ 26} The interpretation of the meaning of "You" that least favors Hartford and most favors plaintiff is that Hartford's policy provided underinsured motorist coverage for Coe's employees.

{¶ 27} The second definition of "Who is an Insured" includes "2. If you are an individual, any family member." Because "You" refers to several corporate entities, including Coe, and because corporations have no family members, the phrase "family member" is susceptible of several reasonable interpretations. It may refer to Coe's employees, and it may refer to Coe's designated drivers only. Or, since corporations have no family members, the language may be considered illogical and therefore a nullity under the law.

{¶ 28} Because Hartford's policy is reasonably susceptible of more than one interpretation with regard to the term "family member," this term must be construed strictly against Hartford and liberally in favor of plaintiff.

{¶ 29} The interpretation of the meaning of "family member" that least favors Hartford and most favors plaintiff is that Hartford's policy provided underinsured motorist coverage for Coe's employees.

{¶ 30} For underinsured motorist coverage, the Hartford policy neither required plaintiff to be acting within the course and scope of his employment, nor excluded plaintiff from coverage for not being within the course and scope of his employment when he was injured.[7]

{¶ 31} Hartford's arguments regarding the separate listing in the policy of Fred Fields as a named individual insured are wholly lacking in factual and legal foundation because:

{¶ 32} R.C. 3937.18 requires Hartford to extend underinsured motorist coverage to *each* named insured; so, the fact that Fred Fields is listed as an additional—albeit individual—insured, does not alter the *Scott–Pontzer* analysis as it applies to the extension of underinsured motorist coverage to the corporate entity of the Coe Manufacturing Company as a separately named insured;

{¶ 33} Hartford's interpretation that Fields is the only individual covered by underinsured motorist coverage is not plausible because the seven named insureds paid more than $26,000.00 annually to provide underinsured motorist coverage. The premium payments by the corporate named insureds support the conclusion that the parties intended to provide underinsured motorist coverage for the corporations' directors, officers, employees, representatives, and/or agents;

{¶ 34} Hartford's policy contains specific exclusions of coverage, but it does not contain any exclusion of underinsured motorist coverage for the employees of Coe. Similarly, the endorsement listing Fred Fields as a named insured contains no language excluding employees of the named corporate insureds from underinsured motorist coverage. "Where exceptions, qualifications, or exemptions are introduced into an insurance contract, a general presumption arises to the effect that that which is not clearly excluded from the operation of such contract is included in the operation thereof"[8];

{¶ 35} Exclusions that are not clear and exact on their face cannot bar or limit coverage.[9] Because Hartford failed to specifically exclude the employees of

---

**7.** In connection with this argument, plaintiff cites the following cases: *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.* (1999), 85 Ohio St.3d 660, 710 N.E.2d 1116; *Decker v. CNA Ins. Co.* (1990), 66 Ohio App.3d 576, 585 N.E.2d 884; *Frank v. Cincinnati Ins. Co.* (July 12, 1999), Stark App. No. 1998CA00318, 1999 WL 547946; *Moore v. State Auto. Ins. Co.* (2000), 88 Ohio St.3d 27, 723 N.E.2d 97; *Selander v. Erie Ins. Group* (1999), 85 Ohio St.3d 541, 709 N.E.2d 1161; *Ezawa v. Yasuda Fire & Marine Ins. Co.* (1999), 86 Ohio St.3d 557, 715 N.E.2d 1142; and *Bagnoli v. Northbrook Prop. & Cas. Ins. Co.* (1999), 86 Ohio St.3d 314, 715 N.E.2d 125.

**8.** *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380.

**9.** *Lincoln Elec. Co. v. St. Paul Fire & Marine Ins. Co.* (N.D.Ohio 1998), 10 F.Supp.2d 856; *Lane v. Grange Mut. Cos.* (1989), 45 Ohio St.3d 63, 543 N.E.2d 488.

"named insured" corporations when Hartford included Fred Fields as a "named insured," Hartford cannot now bar or limit underinsured motorist coverage for plaintiff.[10]

{¶ 36} The endorsement listing Fred Fields as an individual "named insured" does not make the *Scott–Pontzer* decision irrelevant because:

{¶ 37} The relevant Hartford policy language defining "Who Is An Insured" is identical to the language in the policy at issue in the *Scott–Pontzer* decision;

{¶ 38} The Hartford policy lists six corporate named insureds and one individual named insured, and it refers to them all as "You." Under *Scott–Pontzer*, supra, and *King v. Nationwide Ins. Co.*, supra, the use of "you" in reference to corporate named insureds is susceptible of various interpretations.[11] One of those interpretations mandates underinsured motorist coverage for corporate employees, and since that interpretation is favorable to plaintiff, it is the interpretation that this court must adopt; and

{¶ 39} Contrary to Hartford's argument, *Scott–Pontzer* does not stand for the proposition that the inclusion of an individual named insured in a policy that has

---

10. Plaintiff also argues that the endorsement listing Fred Fields as a "named Insured" is incomplete because it does not exclude employees of "named insured" corporations from receiving underinsured motorist coverage. Similarly, plaintiff argues that the endorsement listing Fred Fields as an individual named insured fails to plainly state that he is the *only* individual eligible to receive underinsured motorist coverage. These arguments merely restate the earlier point that exclusions must be clear and exact.

11. {¶ a} The court is aware of possible problems with the interpretation urged by the plaintiff. For instance, Fred Fields was the owner, president, and CEO of Coe Manufacturing. Therefore, it seems likely—although the record before the court is silent on this precise point—that Fred Fields was also an employee of Coe. Since, under plaintiff's *Pontzer* analysis of the policy language, Fields would have been covered as an employee of a corporate named insured, the natural question to ask is why the parties to the insurance contract would choose to cover Fields a second time by making him a named insured?

{¶ b} One likely answer is that—as a named insured—Fields (and his family members) would be covered regardless of whether he or they were acting within the course and scope of employment, whereas other employees would be covered through the corporate named insureds, but only while acting within the course and scope of their employment.

{¶ c} However, it is apparent to this court that the argument over the parties' intent is misplaced and inappropriate in this case. The parties entered into the insurance contract prior to the issuance of the *Scott–Pontzer* decision. In light of the largely unforeseen—and some would argue, unforeseeable—nature of the *Scott–Pontzer* decision, it is mere sophistry to suppose that the parties ever imagined that the word "You" as used in the policy would include underinsured motorist coverage of a corporate employee who was acting outside the course and scope of his employment and driving his own vehicle.

{¶ d} Nevertheless, this court is required to apply the law as it exists in Ohio. Therefore, notwithstanding these and other problems in interpreting the parties' intent, plaintiff is correct to point out that this court must strictly interpret ambiguities against the insurer and liberally interpret them in favor of the insured. *King v. Nationwide Ins. Co.*

six named corporate insureds obviates underinsured motorist coverage for all corporate employees.

{¶ 40}   In support of the foregoing arguments, plaintiff attached the following documents to its brief in opposition:

{¶ 41}   Affidavit of Eugene Miller, attached to plaintiff's brief as plaintiff's exhibit 1; and

{¶ 42}   Affidavit of Ralph C. Buss, attached to plaintiff's brief as plaintiff's exhibit 2.

## REPLY BRIEF OF DEFENDANT HARTFORD

{¶ 43}   On April 19, 2001, defendant Hartford filed its reply brief and made the following arguments: (1) The ambiguity found in *Scott–Pontzer* turned on the fact that the only named insured in that policy was a corporation; (2) *Scott–Pontzer* does not apply to this case because the Hartford policy includes a specific individual named insured, and the naming of that individual insured "makes it clear that the parties intended that the only individual to be covered outside the scope of employment was Fred Fields"; and (3) the cases relied upon by plaintiff involved policy terms that differ significantly from those of the Hartford policy.

{¶ 44}   In support of these arguments, defendant attached the following documents:

{¶ 45}   Unverified responses to defendant's second set of interrogatories and second request for production of documents, attached to the reply brief as defendant's exhibit A;

{¶ 46}   A copy of excerpts from the deposition of Eugene William Miller, taken in *Eugene W. Miller v. Kimberly R. Ivary*, Lake County Common Pleas Case No. 99CV000872, attached to the reply brief as defendant's exhibit B;

{¶ 47}   A copy of Beverly Trenney's notarized certification of plaintiff's medical records kept by Lake Hospital System, Inc.

## PLAINTIFF'S BRIEF IN REPLY

{¶ 48}   On May 3, 2001, plaintiff filed his brief in reply, arguing that (A) the medical evidence shows that plaintiff's blood-alcohol content on the date of the collision was within legal limits; (B) plaintiff's medical leave status has no bearing on the issue of underinsured motorist coverage; (C) *Scott–Pontzer* applies to this case notwithstanding the separate listing of Fred Fields as a named insured; (D) the mere listing of Fred Fields as a named insured does not constitute a clear exclusion of employees not acting within the scope and course of their employ-

ment; and (E) the "family member" language entitles plaintiff to underinsured motorist coverage as a "family member" of Coe.

## ADDITIONAL REPLY BRIEF OF DEFENDANT HARTFORD

{¶ 49}   On May 22, 2001, defendant Hartford filed its "Additional Reply Brief in Support of Its Motion for Summary Judgment," in which it argued that "*Scott–Pontzer* does not stand for the blanket proposition that simply because a corporation is listed as a named insured in a commercial automobile liability insurance policy does uninsured/underinsured motorist coverage automatically extend to all of its employees.   A court must still first determine whether there is ambiguity in the policy[.]"   This court agrees with that statement.

## DEFENDANT HARTFORD'S SUPPLEMENTAL AUTHORITY

{¶ 50}   On June 13, 2001, defendant Hartford filed its request that the court consider supplemental authority, the authority being a June 1, 2001 decision by the Clermont County Court of Common Pleas, case No. 99CVC169, namely *Lorna Amiott v. GRE Ins. Group and Fed. Ins. Co.* That court upheld the same argument being made by Hartford in the within action, where substantially identical language was in controversy.   For reasons stated hereafter, this court does not find that court's reasoning or analysis authoritative.

## SUMMARY JUDGMENT

{¶ 51}   Civ.R. 56(C) states:

{¶ 52}   "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.   No evidence or stipulation may be considered except as stated in this rule.   A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

{¶ 53}   Thus, before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that

conclusion is adverse to the party against whom the motion for summary judgment is made.[12]

{¶ 54}  The main purpose of the summary judgment procedure is to enable a party to go behind the allegations in the pleadings and assess the proof in order to see whether there is a genuine need for trial.  The remedy should be applied sparingly and only in those cases where the justice of its application is unusually clear.  Resolving issues of credibility or reconciling ambiguities and conflicts in witness testimony is outside the province of a summary judgment.[13]  In reviewing a motion for summary judgment, the court must construe the evidence and all reasonable inferences drawn therefrom in a light most favorable to the party opposing the motion.[14]

{¶ 55}  Under Ohio law, for purposes of ruling on a motion for summary judgment, a dispute of fact is "material" if it affects the outcome of the litigation. The dispute is "genuine" if it is manifested by substantial evidence going beyond the mere allegations of the complaint.[15]

{¶ 56}  Here, defendant Hartford argues, in essence, that plaintiff is not an insured because there is no language in the policy *including* him.  Plaintiff argues in response that plaintiff is an insured because the policy fails to *clearly limit* the uninsured/underinsured coverage to employees acting within the scope and course of their employment, and because the policy fails to *clearly exclude* from uninsured/underinsured coverage employees who are not acting within the scope of employment.

## DISCUSSION

{¶ 57}  It is the opinion of this court that the decision in *Scott–Pontzer* does not apply to the facts of this case.  *Scott–Pontzer* is distinguishable.[16]  However, the court's inquiry does not end with that determination.

---

**12.**  *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267; *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 667 N.E.2d 1197.

**13.**  *Napier v. Brown* (1985), 24 Ohio App.3d 12, 24 OBR 33, 492 N.E.2d 847.

**14.**  *Morris v. Ohio Cas. Ins. Co.* (1988), 35 Ohio St.3d 45, 517 N.E.2d 904; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.

**15.**  *Mount v. Columbus & S. Ohio Elec. Co.* (1987), 39 Ohio App.3d 1, 528 N.E.2d 1262.

**16.**  The decision and the rationale in *Scott–Pontzer v. Liberty Mut. Ins. Co.* (1999), 85 Ohio St.3d 660, 710 N.E.2d 1116, were expressly based on the fact that the only named insured listed in the policy was a corporation.  This fact may have been foundational to the *Scott–Pontzer* opinion.  The present case involves a fact pattern that is categorically different from that of *Scott–Pontzer*, in that there was one individual named insured.

{¶ 58} It is a well-established principle that UM coverage was designed to protect insureds.[17] The object of UM coverage is to "afford the insured additional protection in the event of an accident."[18] The Ohio Supreme Court has further interpreted UM coverage as extending only to insureds, specifying that the claimant must be an insured to recover.[19] Because coverage by operation of law is rooted in the requirements of R.C. 3937.18, it follows that it exists for the benefit of the individuals that R.C. 3937.18 was designed to protect.[20] The statutory purpose of requiring UIM coverage is to provide "coverage for injured persons who have a legal cause of action against the tortfeasor but who are undercompensated for their injuries because the tortfeasor's liability coverage is insufficient to provide full compensation."[21] R.C. 3937.18 does not distinguish between commercial and consumer automobile or motor vehicle liability policies.[22]

{¶ 59} An insurance policy is a contract, and the relationship between the insured and the insurer is purely contractual in nature.[23] As in all cases in which insurance coverage is provided by an insurance policy, the issue in this case will be determined by a reasonable construction of the contract in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed.[24] If a contract is clear and unambiguous, its interpretation is a matter of law to be decided by the court (possibly through summary judgment), and there is no issue of fact to be determined.[25] Common words appearing in the policy will be given their ordinary meaning unless

---

17. See R.C. 3937.18(A).

18. *Motorists Mut. Ins. Co. v. Tomanski* (1971), 27 Ohio St.2d 222, 224, 56 O.O.2d 133, 134, 271 N.E.2d 924, 925.

19. *Martin v. Midwestern Group Ins. Co.* (1994), 70 Ohio St.3d 478, 480, 639 N.E.2d 438, 440.

20. Dissent of Cook, J., in *Schumacher v. Kreiner* (2000), 88 Ohio St.3d 358, 361, 725 N.E.2d 1138.

21. *Miller v. Progressive Cas. Ins. Co.* (1994), 69 Ohio St.3d 619, 623, 635 N.E.2d 317; *State Farm Auto. Ins. Co. v. Alexander* (1992), 62 Ohio St.3d 397, 400, 583 N.E.2d 309.

22. *Selander v. Erie Ins. Group* (1999), 85 Ohio St.3d 541, 709 N.E.2d 1161.

23. *Nationwide Mut. Ins. Co. v. Marsh* (1984), 15 Ohio St.3d 107, 109, 15 OBR 261, 472 N.E.2d 1061, 1062.

24. *Dealers Dairy Products Co. v. Royal Ins. Co.* (1960), 170 Ohio St. 336, 10 O.O.2d 424, 164 N.E.2d 745; *Bobier v. Natl. Cas. Co.* (1944), 143 Ohio St. 215, 28 O.O. 138, 54 N.E.2d 798; *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380; *Gomolka v. State Auto. Mut. Ins. Co.* (1982), 70 Ohio St.2d 166, 167–168, 24 O.O.3d 274, 436 N.E.2d 1347.

25. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684; *Leber v. Smith* (1994), 70 Ohio St.3d 548, 553, 639 N.E.2d 1159.

manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the policy.[26] However, in drafting contracts of insurance, insurers must do so with language that is clear and unambiguous and that comports with the requirements of the law,[27] and where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured.[28] In this regard, a policy is ambiguous only if its terms are subject to more than one reasonable interpretation.[29]

■ {¶ 60} In the present case, the insurance policy listed six corporate insureds and one individual insured. The "Ohio Uninsured Motorists Coverage—Bodily Injury" endorsement[30] defines "Who Is An Insured" as follows:

{¶ 61} "**1. You.**

{¶ 62} "**2. If you are an individual, any 'family member'.**

{¶ 63} "**3. Anyone else 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto'. The covered 'auto' must be out of service because of its breakdown, repair, servicing, loss, or destruction.**

{¶ 64} "**4. Anyone for damages he or she is entitled to recover because of 'bodily injury' sustained by another 'insured'.**"

{¶ 65} Manifestly, the first definition, "You," was intended to apply to all of the named insureds,[31] regardless of whether they were corporations or individuals, and this definition extended uninsured/underinsured motorist coverage to

---

26. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146; *Olmstead v. Lumbermens Mut. Ins. Co.* (1970), 22 Ohio St.2d 212, 216, 51 O.O.2d 285, 259 N.E.2d 123; *Blue Cross & Blue Shield Mut. of Ohio v. Hrenko* (1995), 72 Ohio St.3d 120, 122, 647 N.E.2d 1358.

27. *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380; *Martin v. Midwestern Group Ins. Co.* (1994), 70 Ohio St.3d 478, 639 N.E.2d 438.

28. *Faruque v. Provident Life & Acc. Ins. Co.* (1987), 31 Ohio St.3d 34, 31 OBR 83, 508 N.E.2d 949; *Thompson v. Preferred Risk Mut. Ins. Co.* (1987), 32 Ohio St.3d 340, 342, 513 N.E.2d 733, 736; *Blue Cross & Blue Shield Mut. of Ohio v. Hrenko* (1995), 72 Ohio St.3d 120, 122, 647 N.E.2d 1358.

29. *Hacker v. Dickman* (1996), 75 Ohio St.3d 118, 119–120, 661 N.E.2d 1005.

30. Unlike the "named insured" endorsement, the uninsured motorist endorsement states expressly, "This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below." No date was indicated "below," so the uninsured endorsement was effective on the inception date of the policy: November 1, 1998.

31. In determining the availability of underinsured motorist coverage, the term "you" has been judicially defined to include the corporation, as the named insured, as well as its employees. *United Ohio Co. v. Bird* (May 18, 2001), 5th Dist. No. 00CA31, 2001 WL 575172.

each of the named insureds. The second definition, "If you are an individual, any 'family member'," was clearly intended to apply to the named individual insured, Fred Fields, and extended coverage to all of his family members. The third definition, "Anyone else 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto'," was clearly intended to cover occupants of autos owned by the named insureds. And the fourth definition was clearly intended to cover "anyone" as long as they were entitled to recover damages for "bodily injury" sustained by "another insured."

{¶ 66}  The contracting parties[32] clearly intended to enter into a commercial liability insurance policy with uninsured/underinsured motorist coverage. With respect to the uninsured/underinsured motorist coverage, the probable intent of the insurer and the named insureds was to insure Fred Fields and his family members under all circumstances (regardless of whether he or they were acting within the scope and course of employment) and to insure the employees of the corporate named insureds while the corporate employees were acting in the scope and course of their employment.[33]  However, because insurance contracts are governmentally regulated contracts of adhesion,[34] the insurer carries the added burden of drafting the contract with language that is clear and unambiguous and that comports with the requirements of the law.[35]  Where the insurer fails to carry that burden, any resulting ambiguity is read strictly against the insurer and in favor of the insured.[36]  This is not so much because the favorable interpreta-

---

32.  Of course, the plaintiff in this case was not one of the contracting parties. He stands in the position of a third-party beneficiary.

33.  {¶ a}  *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.* (1999), 85 Ohio St.3d 660, 710 N.E.2d 1116, 1122–1123 (Lundberg Stratton, J., dissenting).  Justice Lundberg Stratton asserts in her dissent, "A commercial policy cannot be reasonably construed to provide uninsured or underinsured motorist coverage in the case of the personal, nonemployment-related activities of an employee."  This court agrees with that analysis; however, the case under consideration is not a mere matter of construing the contract and the parties' intent.

{¶ b}  In issuing a contract of adhesion, the insurer has the added burden of making the contract language clear.  In failing to meet that burden, the insurer bears the consequence of having resulting ambiguities read strictly against it and in favor of the insured.  *Buckeye Union Ins. Co. v. Price* (1974), 39 Ohio St.2d 95, 68 O.O.2d 56, 313 N.E.2d 844.  Hence, the result in this case is not so much the product of construing the contract and the parties' intention as it is the product of holding the insurer accountable for drafting imprecise language when clear language was possible.

34.  The government requires the offer of such insurance and states its purpose and scope—the insurer picks the words and sets the price.  The insureds have no bargaining power whatsoever.  The insurers are bound by the words they choose.

35.  *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380; *Martin v. Midwestern Group Ins. Co.* (1994), 70 Ohio St.3d 478, 639 N.E.2d 438.

36.  *Faruque v. Provident Life & Acc. Ins. Co.* (1987), 31 Ohio St.3d 34, 31 OBR 83, 508 N.E.2d 949; *Thompson v. Preferred Risk Mut. Ins. Co.* (1987), 32 Ohio St.3d 340, 342, 513 N.E.2d 733, 736.

tion necessarily reflects the intent of the parties, but rather because the insurance company's bargaining power is so much greater than that of the insured.

{¶ 67} In this case, notwithstanding the parties' evident intent, the identity of "insureds" within the commercial automobile policy issued by Hartford is ambiguous and does not comport with the UIM requirements of R.C. 3937.18. The policy lists Coe as a named insured and appears to extend UIM coverage to Coe, but a corporation can neither sustain personal injury nor operate a motor vehicle. Accordingly, any purported UIM coverage of Coe—as a corporate person—is a nullity.

{¶ 68} What language, therefore, in Hartford's policy clearly and unambiguously permits UIM coverage for employees of Coe Manufacturing who are in the scope and course of employment—such as a salesman using his own car to make a sales call or a worker walking across Bank Street between buildings? None exists. Under the terms of the policy, UIM coverage clearly and unambiguously applies only to Fred Fields and his family members, and to anyone occupying an auto insured by Coe, and to those who have consortium claims on account of injury to any of these persons. UIM coverage, therefore, would not apply to officers or employees of Coe occupying noncovered autos or walking. This result is contrary to the mandate of R.C. 3937.18, which requires coverage for injured persons at the hand of uninsured motorists, regardless of whether the injured person is in a covered auto or in any auto at all. This result is also contrary to the apparent intent of the parties.

{¶ 69} Accordingly, there are at least two difficulties with the Hartford policy language. First, the word "you" is ambiguous in the context of a corporate named insured. Second, the scope of "insured" under Hartford's policy does not provide the requisite statutory coverage. However, there is a reasonable construction that resolves both difficulties. Under this construction, "You" would include all of the individual persons through whom the corporation exists and functions, i.e., its officers, directors, shareholders, employees, and their individual agents or servants. This construction would provide UIM coverage as required by the statute and would remove the ambiguity that arises when a corporation purchases UIM coverage for bodily injury. If the parties to this commercial vehicle policy actually wanted *not* to insure officers, directors, shareholders, and employees of Coe—or anyone other than Fred Fields and his family—Hartford easily could have said so in the policy. The same is true as to the issue of coverage within or without the scope and course of employment.

{¶ 70} Another way of viewing this issue is to answer the question: Can an insurer offer UM coverage in a motor vehicle policy of insurance to LESS than ALL of the named insureds and still be in compliance with R.C. 3937.18? If

the answer is "Yes," then it means, for example, that an insurer may offer UM coverage to three out of four individual named insureds in a personal motor vehicle policy.  If so, then Hartford's policy is unambiguous and provides UM coverage only for the Fred Fields family and occupants of covered autos—employees, directors, officers, and shareholders of the Coe Manufacturing Company, Coe Manufacturing Ltd., EOC Holdings, Inc., Albany International Industries, Inc, Coe Export, Inc., and FWF Investments, Inc. are not covered under any circumstances other than occupying a covered auto.  If the answer is "No," then this court's decision is proper.

{¶ 71}   The Ohio General Assembly has declared in R.C. 3937.18:

{¶ 72}   "(A) No * * * motor vehicle liability policy of insurance * * * shall be * * * issued * * * unless * * * the following coverages are offered to persons insured under the policy due to bodily injury or death suffered by such insureds: * * * uninsured [and underinsured] motorist coverage, which * * * shall provide protection for bodily injury, sickness, or disease, including death * * * for the protection of insureds thereunder who are legally entitled to recover from owners or operators of uninsured [and underinsured] motor vehicles because of bodily injury, sickness, or disease, including death, suffered by any person insured under the policy.  * * *

{¶ 73}   " * * *

{¶ 74}   "(C) A named insured * * * may reject or accept * * * coverages as offered under division (A) of this section * * *. A named insured's * * * written, signed rejection of * * * coverages as offered under division (A) of this section * * * shall be * * * *binding on all other named insureds, insureds, or applicants.*

{¶ 75}   " * * *

{¶ 76}   "(F) The coverages offered under this section shall not be made subject to an exclusion or reduction in amount because of any workers' compensation benefits payable as a result of the same injury or death."  (Emphasis added.)

{¶ 77}   This court believes that the answer must be "No," so that the statutory and legislative mandate be achieved.  Coe cannot buy a policy and Hartford cannot offer a policy in which only one named insured—Fred Fields—has UM coverage.  Therefore, all of the corporations have UM coverage.  But for UM coverage for a corporation to have meaning—to comply with the legislative purpose of such coverage—the corporate employees, officers, directors, and shareholders must be covered and read into the definition of the ambiguous "You."

## CONCLUSION

{¶ 78} For purposes of determining uninsured and underinsured motorist coverage, the court finds that the word "You" as applied to Coe Manufacturing Company is ambiguous. "You" could reasonably include any of the individuals through whom the corporation acts—the corporation's individual employees, individual directors, individual shareholders, individual officers, and/or their individual agents or servants. The policy fails to clearly exclude any of the possible individuals from uninsured/underinsured motorist coverage.

{¶ 79} The court further finds that, for any of the foregoing possible individuals to whom "You" might apply, the policy fails to clearly limit uninsured/underinsured motorist coverage to those occasions when such individuals are acting within the scope and course of employment.

{¶ 80} Faced with the foregoing ambiguities, this court is required by law to construe the ambiguities strictly against the insurer and in favor of the insured.[37]

{¶ 81} This court does not make this decision lightly, but rather reluctantly. It is faced with making a determination that contravenes the obvious intent (and obviously not stated) of the parties to the insurance policy—to cover the individuals who comprise and make the corporation function, within the scope and course of their employment. However, when grappling with the language *Hartford chose* to use—which is ambiguous at best—and Hartford's current retrospective assertion that it really did mean to cover only Fred Fields and his family (24 hours a day/7 days a week) and those individuals who are inside a covered vehicle, and not a single person more—which contravenes R.C. 3937.18(C)—this court must interpret the language used as if the Hartford wordsmiths were drafting what R.C. 3937.18 mandated, i.e., uninsured/underinsured motorists coverage for *persons*.

{¶ 82} Therefore, with respect to the issue of whether plaintiff was an insured under the Hartford policy for purposes of underinsured motorist coverage, the court finds that there are no genuine issues of material fact, plaintiff is entitled to judgment as a matter of law, and—construing the evidence most strongly in favor of defendant Hartford—it appears from the evidence that reasonable minds can come to but one conclusion, and that conclusion is adverse to defendant Hartford. Therefore, plaintiff's cross-motion for partial summary judgment is hereby granted. Accordingly, plaintiff Eugene Miller was, at the time of the motor vehicle accident on December 2, 1998, an insured under the policy issued by defendant

37. *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380.

Hartford to the Coe Manufacturing Company et al. Also, for the foregoing reasons, defendant's motion for summary judgment is hereby denied.

{¶ 83}   IT IS SO ORDERED.

Judgment accordingly.