FARUQUE ET AL., APPELLANTS, *v.* PROVIDENT LIFE & ACCIDENT INSURANCE COMPANY ET AL., APPELLEES.

[Cite as Faruque *v.* Provident Life & Acc. Ins. Co. (1987), 31 Ohio St. 3d 34.]

(No. 86-1359—Decided June 3, 1987.)

*Nukes & Perantinides Co., L.P.A.,* and *Paul G. Perantinides,* for appellants.

*Roderick, Myers & Linton* and *Kurt R. Weitendorf,* for appellees.

SWEENEY, J. The first issue presented for our determination is whether the express terms of the excess major medical insurance policy permit a modification of the allowable benefits payable; or whether plaintiffs' rights to unlimited nursing care benefits vested, thus entitling them to such benefits under the original terms of the excess policy.

Defendants-appellees argue that the operative provision relied on by the court of appeals below (*i.e.,* the "Benefit Provision") guarantees benefits solely for expenses incurred within a benefit period. It is the defendants' contention that the policy in issue is a "medical expense" policy and not a "health-accident" policy; and that, therefore, no rights were vested upon the occurrence of Dr. Faruque's illness and the policy was subject to modification at the end of the benefit period. Defendants assert that while a "health-accident" policy will vest the insured's right to benefits when an illness or injury occurs, a "medical expense" policy will vest the insured's rights to benefits only when expenses are incurred, and then only for the duration of the benefit period. Defendants submit that the title of the subject policy is "Group Excess Major Medical Expense Insurance," thus indicating that this policy is a "medical expense" policy.

The plaintiffs-appellants contend that there is nothing in the policy which provides for the modification of benefits at any time during the life of the contract that they entered into with defendants. Plaintiffs also argue that the only provision in the policy that even mentions modification concerns a change in the renewal premiums. The plaintiffs submit that the provision in the policy that most closely refers to their situation (*i.e.,* long-term illness or total disability) is that found in the third paragraph of the "Benefit Provision" which states in relevant part:

"If an Insured Member * * * is totally disabled by an * * * Illness for which Covered Expenses are being incurred on the date the insurance under the Group Policy with respect to the Insured Member * * * is terminated, benefits will be payable as provided above for Covered Expenses incurred for the treatment of that Illness * * * during the continuation of such disability but not beyond the end of the Benefit Period during which the insurance was terminated."

Plaintiffs assert that under this provision, benefits are payable during the continuation of a total disability and end only when the insurance is

terminated.[1] It is undisputed that the instant policy has not been terminated. In any event, plaintiffs contend that even if this court finds that the above provision does not entirely resolve the issue of whether defendants may modify the contract as to plaintiffs' interest, this court should at least find that the insurance contract is ambiguous and that it therefore must be strictly construed against the drafters of the policy, and liberally construed in plaintiffs' favor.

In reviewing the various arguments submitted by all parties concerning the excess policy in issue, we do not believe that the terms of the policy are concise enough to dispose of the matter simply on the language employed in the contract of insurance. As both parties concede, the dispositive issues posed in this cause are ones of first impression before this court.

While defendants present an interesting discussion of the distinction between a "medical expense" policy and a "health-accident" policy, we do not find such a distinction to be either compelling or controlling in the instant factual context. As plaintiffs correctly point out, the only use of the term "medical expense" is the title of the policy itself. There is nothing in the body of the policy that explains, much less mentions, the characteristics of such a "medical expense" policy as proposed by defendants' arguments. Although such a distinction may be germane in a different factual situation, we believe that such a distinction has no relevance to our disposition herein.

A review of the instant excess policy reveals a lack of any provision that would allow the drafter of the policy to modify benefits. The only language in the policy which allows for a modification of the terms of the insurance contract is that found in the "Payment of Premium Provisions" section which states in relevant part:

"The Company may change the renewal premiums: (1) as of any premium due date on and after the third anniversary of the Group Policy but not more than once during any period of twelve consecutive months, or (2) whenever the terms or conditions of the Group Policy are modified."

We do not believe that this section clearly or unambiguously sets forth a right to modify the benefits in the manner undertaken by defendants. Likewise, we do not discern any unambiguous right to modify the benefits in this policy under the "Benefit Provision" section of the insurance contract, in contrast to the opinion rendered by the court of appeals below. We find that the court of appeals seriously erred in holding that "[n]othing

---

[1] Under the terms of the policy in issue a termination of insurance occurs upon:

"(1) the date of termination of the Group Policy;

"(2) the date the Group Policy is amended to terminate the insurance with respect to the class of Members in which the Insured Member qualifies for purposes of insurance;

"(3) the date of expiration of the Grace Period if the Insured Member does not make any required premium payment when due; or

"(4) the premium due date next following the date the Insured Member ceases to be eligible as a Member in accordance with the definition in the section headed 'Eligibility'."

in this provision guarantees coverage beyond the benefit period in which the illness arises." A fair reading of this provision or any other provision of the excess policy would reveal that there is no reservation of rights to modify benefits at the conclusion of a benefit period. In addition, there is nothing in the policy that limits the payment of benefits to one benefit period exclusively. As pointed out by plaintiffs, the instant policy contemplates the possibility that there may be more than one "benefit period" in which an insured is receiving benefits for a covered illness or injury, and that the language contained in the "Benefit Period" provision merely sets forth the requirement that a new deductible be paid before another benefit period can commence.[2] The record herein reveals that plaintiffs have paid the deductible amount during Dr. Faruque's disability.

Based on the ambiguity inherent in the instant excess policy, we must apply the standard this court developed in *Buckeye Union Ins. Co.* v. *Price* (1974), 39 Ohio St. 2d 95, 68 O.O. 2d 56, 313 N.E. 2d 844, where it was held in the syllabus:

"Language in a contract of insurance reasonably susceptible of more than one meaning will be construed liberally in favor of the insured and strictly against the insurer."

See, also, *Ohio Farmers Ins. Co.* v. *Wright* (1969), 17 Ohio St. 2d 73, 46 O.O. 2d 404, 246 N.E. 2d 552; *Gomolka* v. *State Auto. Mut. Ins. Co.* (1982), 70 Ohio St. 2d 166, 24 O.O. 3d 274, 436 N.E. 2d 1347; *Gomolka* v. *State Auto. Mut. Ins. Co.* (1984), 15 Ohio St. 3d 27, 15 OBR 67, 472 N.E. 2d 700; and 57 Ohio Jurisprudence 3d (1985) 348, Insurance, Section 285.

In construing the subject policy in this manner, we find that plaintiffs' rights have vested with respect to the unlimited nursing care benefits (up to one million dollars) provided in the original terms of the policy prior to the attempted modification by defendants. Given the absence of any modification of benefits clause, along with the fact that plaintiffs have not consented to the attempted modification of nursing care benefits, we believe that such a conclusion is not only fair, but also inescapable. Therefore, we reverse the decision of the court of appeals and enter judgment in favor of plaintiffs, upholding their vested rights to unlimited nursing care benefits under the original terms of the insurance contract.

The remaining issue presented is whether plaintiffs have a valid claim in *quantum meruit* for the reasonable value of nursing services provided by the plaintiff-wife. However, unlike the modification issues heretofore discussed, the issue posed in this vein is clearly and concisely considered in

---

[2] The "Benefit Period" provision of the excess policy states in pertinent part:

" 'Benefit Period' means the period beginning on the date Covered Expenses equal to the applicable deductible amount is [*sic*] incurred and ending at the end of a period of two years from such date; * * * but in no event shall a Benefit Period continue for more than five years. Any expenses incurred after the end of a Benefit Period while the insurance * * * remains in effect shall be considered as having been incurred during a new Benefit Period and subject to a new Deductible Amount."

the instant excess insurance policy. The "Limitations and Exclusions" section of the policy provides in relevant part:

"The benefits provided in the Group Policy will not be payable for any of the following charges, nor may these charges be applied toward satisfaction of the Deductible Amount.

"* * *

"(h)  for services received by an Insured Member or covered Dependent which are performed by the Insured Member, or by a member of the immediate family of the Insured Member or of an Insured Member's spouse; * * *"

Upon a review of the circumstances surrounding plaintiffs' *quantum meruit* claim, we hold that it is plainly unmeritorious in light of the express contractual language set forth above. Therefore, we affirm the court of appeals' decision on this issue.

Accordingly, the judgment of the court of appeals is affirmed with respect to the *quantum meruit* claim. However, we reverse the court of appeals' judgment with respect to plaintiffs' rights to nursing benefits, and remand the cause to the trial court for further proceedings in accordance with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

MOYER, C.J., LOCHER, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

HOLMES, J., concurs in judgment only.