914 F.2d 259
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
WEST AMERICAN INSURANCE CO., Plaintiff-Appellee,
v.
ESCHER, INC., Defendant,
MAUMEE VALLEY FABRICATORS, INC., Defendant-Appellant,
RUSSELL COPE, Defendant.
 No. 89-4058.
 United States Court of Appeals, Sixth Circuit.
 Sept. 5, 1990.
 
 Before KEITH, KRUPANSKY and SUHRHEINRICH, Circuit Judges.
 PER CURIAM:
 
 
 1
 In this declaratory judgment action to clarify the contractual rights under a comprehensive general liability insurance policy, defendant, Maumee Valley Fabrications, Inc. ("Maumee Valley"), appeals from the district court's November 8, 1989 memorandum and order granting summary judgment in favor of plaintiff, West American Insurance Company ("West American"). For the reasons set forth below, we REVERSE.
 
 I.
 
 2
 On October 14, 1986, Russell Cope ("Cope") suffered personal injuries during the course of his employment with Atlantic States Cast Iron Pipe Company in Phillipsburg, New Jersey. Cope and several other workers were on a copula, a large vat which melts scrap metal into hot molten ore. Cope and the other workers were attempting to enlarge a tap hole with an oxygen lancer when the hot iron inside the copula burned a hole through its side. The hot iron came in contact with nearby water; caused an explosion; and injured Cope.
 
 
 3
 Escher, Inc. ("Escher") is an Ohio corporation that sold parts and services for the installation of heat recovery and combustion engineering equipment. Escher participated in the design, construction and maintenance of the copula involved in Cope's accident. At the time of the accident, Escher and Maumee Valley were completely separate corporate entities. In August 1987, Maumee Valley attempted to purchase Escher for $900,000. This purchase, however, failed. Maumee Valley and Escher subsequently agreed to Maumee Valley's purchase of a portion of Escher's assets. On October 30, 1987, Maumee Valley purchased certain tangible property, assets and goodwill from Escher for $45,000.[1] The purchase constituted only 5% of Escher's assets. Maumee Valley thereafter placed the acquired assets into a division of Maumee Valley and operated it as "Escher, Inc. A Division of Maumee Valley Fabricators, Inc."
 
 
 4
 On October 13, 1988, Cope initiated a products liability action against nine defendants in the Court of Common Pleas of North Hampton, Pennsylvania. Cope alleged that all of the defendants had some role in the development, design, manufacture and maintenance of the copula that caused his injuries. Escher, Inc. A Division of Maumee Valley was named as a defendant. On the same day, Cope initiated an identical suit with the same named defendants in the Superior Court of New Jersey.[2]
 
 
 5
 In May 1989, Cope amended his complaint in both the New Jersey and Pennsylvania lawsuits to reflect that Escher and Maumee Valley were separate corporations at the time of Cope's accident. Cope then added successor liability as the theory of recovery against Maumee Valley. Cope's complaint alleged that "[a]lthough [the asset purchase] agreement between the respective defendants indicates that Maumee Valley shall have no responsibility for the liability of Escher, Inc., ... Maumee Valley, as a matter of law, is responsible as the successor corporation to Escher, Inc. for the negligence, breach of express and implied warranties, and strict liability under the theory of product liability...." Complaint for Russell Cope at 1-2, Cope v. Wrib Mfg. Inc., et al., No. W-53849-88 (N.J.Super.Ct. Law Div. filed May 15, 1989); Joint Appendix at 184-85.
 
 
 6
 At all times relevant to the above-described facts, Maumee Valley possessed a West American comprehensive general liability insurance policy. The insurance policy covered Maumee Valley's operation and property. The insurance contract provides the following coverage to Maumee Valley for damages arising out of bodily injury:
 
 I. Coverage A--Bodily Injury Liability
 Coverage B--Property Damage Liability
 
 7
 The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
 
 Coverage A. bodily injury or
 Coverage B. property damage
 
 8
 to which this insurance policy applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.
 
 
 9
 Complaint for West American Insurance Co., Exhibit B, West American Ins. Co. v. Escher, Inc. et al., No. 3:89CV7061 (W.D. Ohio filed Feb. 1, 1989); Joint Appendix at 23 (emphasis added). The term "occurrence" is defined by the insurance policy as "an accident ... which results in bodily injury or property damage neither expected nor intended from the stand point of the insured." Id.
 
 
 10
 After notifying West American of its potential liability, Maumee Valley requested that West American defend Maumee Valley in the lawsuit and cover any damages pursuant to the insurance policy. West American commenced its defense of Maumee Valley but reserved the right to contest its duty to defend under the insurance contract and its duty to pay any damages Maumee Valley is assessed.
 
 
 11
 On February 1, 1989, West American initiated the present action for declaratory relief against Maumee Valley; Cope and Escher were named as additional defendants. Although Escher made an appearance in the district court, Cope did not.
 
 
 12
 In its complaint, West American made two claims: (1) Maumee Valley is not liable to Cope under a theory of successor liability; and (2) an exclusionary clause contained in the insurance policy precluded insurance coverage in Cope's lawsuit. The exclusionary clause provides:
 
 1. Contract Liability Coverage
 
 13
 (A) The definition of incidental contract is to include any contract or agreement relating to the conduct of the named insured's business.
 
 
 14
 (B) The insurance afforded with respect to liability assumed under an incidental contract is subject to the following additional exclusions:
 
 
 15
 1. To bodily injury or property damage for which the insured has assumed liability under an incidental contract, if such injury or damage occurred prior to the execution of the incidental contract.
 
 
 16
 Complaint for West American Insurance Co., Exhibit B, West American Ins. Co. v. Escher, Inc. et al., No. 3:89CV7061 (W.D. Ohio filed Feb. 1, 1989); Joint Appendix at 20 (emphasis added).
 
 
 17
 The parties agreed that there are no factual issues to be resolved in this matter. Accordingly, on September 1, 1989, West American filed a brief supporting its position for judgment.[3] West American argued that as between itself and Maumee Valley, Ohio law established the rights, duties and obligations. Maumee Valley, therefore, would not be liable to Cope for his injuries because Ohio does not recognize the legal theory of successor liability. Furthermore, West American contended that the insurance contract specifically excluded liability assumed by the insured under an incidental contract if the injury or damage occurred prior to the execution of the incidental contract.
 
 
 18
 On October 2, 1989, Maumee Valley filed a motion for summary judgment. Maumee Valley agreed that it was not liable to Cope under a theory of successor liability. Maumee Valley, however, disagreed with West American's interpretation of the insurance contract. Maumee Valley argued that because it did not assume any of Escher's liabilities in the asset purchase agreement, the exclusionary clause, by its plain language, did not apply to the present facts.
 
 
 19
 On November 8, 1989, the district court granted summary judgment in favor of West American. Relying on Flaugher v. Cone Automatic Machine Co., 30 Ohio St.3d 60, 507 N.E.2d 331 (Ohio 1987), the district court determined that Maumee Valley was not liable to Cope under a theory of successor liability.[4] In addition, the district court concluded that the insurance contract did not cover any liability Maumee Valley might incur from Cope's accident because the insurance contract's exclusionary provision clearly and unambiguously excludes liability for injuries that occurred prior to the execution of the contract.
 
 
 20
 On November 20, 1989, Maumee Valley filed a timely notice of appeal.
 
 II.
 
 21
 On appeal, Maumee Valley raises the sole issue of whether the district court properly determined that the insurance contract excludes coverage of potential liability arising from Cope's accident. Maumee Valley argues that the district court misconstrued the plain language of the exclusionary provision contained in the insurance contract. Maumee Valley contends that the exclusionary clause only applies to situations where the insured specifically contracted to assume the liability of the purchased company. West American argues that the exclusionary clause applies to all cases where the insured is subject to liability as a result of contracts it has entered into during the course of business. West American contends that all potential liability, whether in tort or contract, that arises from a contractual obligation taken by Maumee Valley is within the meaning of the insurance contract's exclusionary clause. Finding Maumee Valley's argument persuasive, we conclude that the district court erred in granting summary judgment in favor of West American.
 
 
 22
 To discern the meaning of the exclusionary provision we must utilize a "reasonable construction of the contract in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed." King v. Nationwide Ins. Co., 35 Ohio St.3d 208, 211, 519 N.E.2d 1380, 1383 (Ohio 1988). Where provisions of an insurance contract are reasonably susceptible to more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured. Faruque v. Provident Life & Acc. Ins. Co., 31 Ohio St.3d 34, 38, 508 N.E.2d 949, 952 (Ohio 1987). "[C]ommon words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." Alexander v. Buckeye Pipe Line Co., 53 Ohio St.2d 241, 245, 374 N.E.2d 146, 150 (Ohio 1978); see also Miller v. Marrocco, 28 Ohio St.3d 438, 439, 504 N.E.2d 67, 69 (Ohio 1986) ("A court has an obligation to give plain language its ordinary meaning and to refrain from rewriting the contractual agreement of the parties.").
 
 
 23
 In the instant case, Maumee Valley did not assume any liability from Escher by its asset purchase agreement.[5] In fact, after amending his complaint in the New Jersey and Pennsylvania lawsuits, Cope's claim against Maumee Valley rests solely on the theory of successor liability which arises under tort law, not contract law. Successor liability arises wholly independent of any contract or agreement between the purchaser of the assets and the seller. Accordingly, Maumee Valley did not assume any potential liability from the asset purchase agreement with Escher.
 
 
 24
 Moreover, the language of the exclusionary clause provides no coverage for:
 
 
 25
 [B]odily injury ... which the insured has assumed liability under any incidental contract, if such injury or damage occurred prior to the execution of the incidental contract.
 
 
 26
 Complaint for West American Insurance Co., Exhibit B, West American Ins. Co. v. Escher, Inc. et al., No. 3:89CV7061 (W.D.Ohio filed Feb. 1, 1989); Joint Appendix at 20 (emphasis added). The insurance contract defines "incidental contract" as "any contract or agreement relating to the conduct of the named insured's business." Id.
 
 
 27
 Maumee Valley contends that the first phrase of the exclusionary clause: "which the insured has assumed liability under any incidental contract" controls the instant appeal. West American, on the other hand, claims that the latter phrase of the exclusionary clause: "if such injury or damage occurred prior to the execution of the incidental contract" controls.
 
 
 28
 We find Maumee Valley's interpretation proper. The exclusionary clause only bars coverage of liabilities "assumed under an incidental contract." Maumee Valley's potential liability to Cope does not arise from any duties it assumed under the asset purchase contract. The exclusionary clause, therefore, is inapposite.
 
 III.
 
 29
 Maumee Valley's potential liability to Cope was not assumed by contract. We, therefore, conclude that the district court erred in finding that the exclusionary clause relieved West American of its duty to defend Maumee Valley in the Cope's personal injury action. For the foregoing reasons, we REVERSE the district court's grant of summary judgment in favor of West American.
 
 
 
 [1]
 Maumee Valley purchased desks, typewriters and various tools. Escher also sold Maumee Valley its customer lists and contract files relating to all customers, along with the trade name "Escher, Inc." Maumee Valley did not purchase the cash on hand, bank accounts, accounts receivable and other receivables that Escher owned
 
 
 [2]
 Cope's rationale for filing these identical lawsuits has not been disclosed
 
 
 [3]
 This brief was labelled as a trial brief; however, the district court treated the brief as a motion for summary judgment
 
 
 [4]
 In Flaugher, the Ohio Supreme Court held that a "successor corporation's amenability to suit will depend on the nature of the transaction which gave rise to the change in ownership." Flaugher, 30 Ohio St.3d at 62, 507 N.E.2d at 334. Where there is merely a sale of a corporation's assets, the buyer corporation is not liable for the seller corporation's tortious conduct unless: (1) the buyer expressly or impliedly assumes liability; (2) the transaction is a de facto consolidation or merger, (3) the buyer corporation is merely a continuation of the seller corporation; or (4) the transaction is a fraudulent attempt to escape liability. Id
 
 
 [5]
 In its Brief, West American conceded, and the district court concluded, that Maumee Valley did not assume any liability through the assets purchase agreement with Escher:
 The purchase of the assets of Escher, Inc. by Maumee Valley Fabricators, Inc. does not constitute either an express or implied assumption of such liability and in fact quite the opposite. The sale of the assets did not amount to a de facto merger or consolidation as the corporate officers and directors of each corporation, including the addresses of each corporation, were entirely different. Trial Brief for West American at 6, West American Insurance Co. v. Escher, Inc., et al., No. 89-CV7061 (N.D.Ohio filed Feb. 1, 1989); Joint Appendix at 35; West American Insurance Co. v. Escher, Inc., et al., No. 89-CV7061, slip op. at 4 (N.D.Ohio Nov. 8, 1989); Joint Appendix at 255.