BARBEE ET AL., APPELLEES, *v.* NATIONWIDE MUTUAL

INSURANCE COMPANY, APPELLANT.

[Cite as *Barbee v. Nationwide Mut. Ins. Co.*,

130 Ohio St.3d 96, 2011-Ohio-4914.]

*Underinsured-motorist policy—Alleged conflict between insurance-contract provisions—Exhaustion of the tortfeasor's liability limits is a condition precedent to an insured's right to payment, but it is not a precondition to filing suit by the insured against his insurer within the limitation period— Judgment reversed.*

(No. 2010-1091—Submitted May 24, 2011—Decided September 29, 2011.)

APPEAL from the Court of Appeals for Lorain County,

Nos. 09 CA 009594 and 09 CA 009596, 2010-Ohio-2016.

_____

**CUPP, J.**

{¶ 1} We are asked to decide whether a provision in an automobile insurance policy involving uninsured/underinsured-motorist coverage is ambiguous when read in conjunction with another policy provision. The policy provision at issue requires that an action for uninsured/underinsured-motorist coverage be brought against the insurer within three years of the date of the accident. Other provisions, however, require that proceeds from any other available insurance be exhausted first and that the insured must fully comply with all policy terms before filing suit. For the reasons that follow, we conclude that the policy provision is unambiguous and is enforceable. The judgment of the court of appeals is reversed, and this matter is remanded to the trial court for further proceedings consistent with this opinion.

## I. Facts and Procedural History

{¶ 2}  On October 12, 2002, appellees, Edward Barbee, Darlene Barbee, Thomas Barbee, and Margaret Barbee ("the Barbees"), were involved in an automobile accident in Madison, Wisconsin.[1]  Edward was operating the automobile, which was owned by Margaret.  Thomas, Margaret, and Darlene were passengers.

{¶ 3}  Appellant, Nationwide Mutual Insurance Company, provided insurance for the automobile, which included coverage for uninsured motorists. Under the policy definitions, "uninsured motor vehicle" includes "one which is underinsured."[2]  The policy also contained the following "exhaustion provision":

{¶ 4}  "*Limits and Conditions of Payment*

{¶ 5}  " * * *

{¶ 6}  "6. No payment will be made until the limits of all other liability insurance and bonds that apply have been exhausted by payments.

{¶ 7}  The policy also contained the following "compliance provision":

{¶ 8}  "**10.  SUIT AGAINST US**

{¶ 9}  "No lawsuit may be filed against us by anyone claiming any of the coverages provided in this policy until the said person has fully complied with all the terms and conditions of this policy, including but not limited to the protection of our subrogation rights.

{¶ 10} "Subject to the preceding paragraph, under the Uninsured Motorists coverage of this policy, any lawsuit must be filed against us:

{¶ 11} "a) within three (3) years from the date of the accident."

---

1. Matthew and Harvey Barbee were also involved in the accident.  They were riding in another automobile, which was insured by Allstate Insurance Company.  A separate suit was filed against Allstate, and the cases were consolidated.  Allstate has settled all claims and is not involved in this appeal.

2.  As the issue in this case arose because the tortfeasor was underinsured, in the facts, we will refer to "underinsured-motorist coverage" and not "uninsured-motorist coverage."

{¶ 12} The Barbees' counsel had placed Nationwide on notice of potential underinsured-motorist claims within one year of the accident but did not then file suit.

{¶ 13} Nationwide filed suit separately against the tortfeasors to recover the medical payments that Nationwide had paid on behalf of appellees. Then, more than two years after the accident, the Barbees filed suit against the tortfeasors in federal court in Wisconsin. One defendant was an estate, and the other was the United States of America, by and through its insured, a member of the Armed Forces.

{¶ 14} Faith C. Donley was also injured in the automobile accident. She filed a separate action against the tortfeasors in federal court in Wisconsin, and that suit was consolidated with the Nationwide case. Additionally, within two years of the date of the accident, Donley filed suit against her insurer in the Lorain County Court of Common Pleas, asserting an underinsured-motorist claim. That action was stayed pending resolution of the actions in federal court.

{¶ 15} In Nationwide's case, the court determined that the service member was 30 percent liable for causing the damages in the accident, and the estate was 70 percent liable.

{¶ 16} The Barbees' case then proceeded to trial. Judgment was awarded in their favor. The United States government paid 30 percent of the amounts awarded to the Barbees, and the estate's $75,000 policy coverage was split among them. After this payment, outstanding amounts remained on each of the Barbees' judgments.

{¶ 17} On January 18, 2007, more than four years after the accident, the Barbees filed suit against Nationwide in the Lorain County Court of Common Pleas to recover, under the policy's underinsured-motorist coverage, the outstanding amounts on each of their judgments. Nationwide filed a motion for summary judgment, arguing that the Barbees' claims were barred for failure to

bring the claims within the three-year period required by the policy's limitation provision, a period authorized by R.C. 3937.18(H). The trial court denied Nationwide's motion for summary judgment, concluding that the limitation provision was tolled until the exhaustion provision was satisfied.

{¶ 18} Nationwide appealed the decision to the Ninth District Court of Appeals. In affirming the denial of Nationwide's motion for summary judgment, the court of appeals held that the exhaustion and limitation provisions of Nationwide's underinsured-motorist coverage conflicted, and the conflict created an ambiguity under the facts of the case. *Barbee v. Allstate Ins. Co.,* Lorain App. Nos. 09 CA 009594 and 09 CA 009596, 2010-Ohio-2016, ¶ 33. Therefore, the Ninth District determined, the limitation provision was not enforceable against the Barbees' claims. It held that the trial court had correctly determined that the Barbees did not have a claim for underinsured-motorist coverage until all other liability insurance had been exhausted, and exhaustion did not occur in this case until after the federal court case was concluded. Id. at ¶ 36.

{¶ 19} We accepted Nationwide's appeal under our discretionary jurisdiction. *Barbee v. Allstate Ins. Co.,* 126 Ohio St.3d 1581, 2010-Ohio-4542, 934 N.E.2d 354. Nationwide presents the following proposition of law: "A policy provision that requires uninsured/underinsured actions to be brought against the insurer within three years from the date of the accident is unambiguous and enforceable even when read in conjunction with the exhaustion provision and the provision requiring the insured to fully comply with the terms of the policy before filing suit."

## II. Relevant Statute

{¶ 20} R.C. Chapter 3937 sets forth the laws governing motor-vehicle insurance. R.C. 3937.18 specifically deals with uninsured- and underinsured-motorist coverage. In subsection (H), the General Assembly authorizes a three-

year limitation period within which an insured must bring suit against his insurer for underinsured-motorist coverage:

{¶ 21} "Any policy of insurance that includes uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages may include terms and conditions requiring that, so long as the insured has not prejudiced the insurer's subrogation rights, each claim or suit for uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages be made or brought within three years after the date of the accident causing the bodily injury, sickness, disease, or death, or within one year after the liability insurer for the owner or operator of the motor vehicle liable to the insured has become the subject of insolvency proceedings in any state, whichever is later."

### III.  Analysis

{¶ 22} Our analysis begins with some well-settled principles.  " '[T]he legal basis for recovery under the uninsured motorist coverage of an insurance policy is contract and not tort.' "  *Kraly v. Vannewkirk* (1994), 69 Ohio St.3d 627, 632, 635 N.E.2d 323, quoting *Motorists Mut. Ins. Co. v. Tomanski* (1971), 27 Ohio St.2d 222, 222-223, 56 O.O.2d 133, 271 N.E.2d 924.

{¶ 23} "In Ohio, the statutory limitation period for a written contract is 15 years. R.C. 2305.06.  However, the parties to a contract may validly limit the time for bringing an action on a contract to a period that is shorter than the general statute of limitations for a written contract, as long as the shorter period is a reasonable one."  *Sarmiento v. Grange Mut. Cas. Co.*, 106 Ohio St.3d 403, 2005-Ohio-5410, 835 N.E.2d 692, ¶ 11, citing *Miller v. Progressive Cas. Ins. Co.* (1994), 69 Ohio St.3d 619, 624, 635 N.E.2d 317, and *Colvin v. Globe Am. Cas. Co.* (1982), 69 Ohio St.2d 293, 295, 23 O.O.3d 281, 432 N.E.2d 167, overruled on other grounds by *Miller.*  "A contract provision that reduces the time provided

in the statute of limitations must be in words that are clear and unambiguous to the policyholder." Id., citing *Colvin* at 296.

{¶ 24} The parties do not dispute that the policy clearly and unambiguously limits to three years the time in which the Barbees may sue Nationwide for underinsured-motorist benefits and complies with R.C. 3937.18(H). Instead, the dispute is about when the three-year period began to run.

{¶ 25} Nationwide argues that the exhaustion, compliance, and limitation provisions unambiguously declare that the Barbees' causes of action for underinsured-motorist benefits arise on the date of the accident. Moreover, the provisions, when read together, plainly require an insured to (1) fully comply with the terms and conditions of the policy, (2) which include, but are not limited to, protecting Nationwide's subrogation rights, and (3) file suit within three years of the date of the accident.

{¶ 26} The Barbees contend that reading the exhaustion, compliance, and limitation provisions in concert dictates that an insured's underinsured-motorist claim does not arise until all other liability-insurance limits are exhausted. They assert that under the factual circumstances of this case, the claim accrued three years after the conclusion of the federal litigation. Only at the end of the federal litigation, the Barbees argue, did they know that they had an underinsured-motorist claim.

{¶ 27} Nationwide, however, contends that the exhaustion provision limits and conditions the timing of its payments to its insured but does not impose any duties or responsibilities on the insureds. In other words, the exhaustion provision is not a term or condition of the policy that must be satisfied prior to filing suit against Nationwide for determining coverage.

{¶ 28} Accepting that Nationwide's interpretation is plausible, the Barbees nevertheless assert that their construction of the provisions, when read in

pari materia, is as reasonable as Nationwide's. And when two plausible interpretations of policy language exist, they say, the uncertainty must be resolved in favor of the insured. See *Neal-Pettit v. Lahman*, 125 Ohio St.3d 327, 2010-Ohio-1829, 928 N.E.2d 421, ¶ 17, citing *Buckeye Union Ins. Co. v. Price* (1974), 39 Ohio St.2d 95, 68 O.O.2d 56, 313 N.E.2d 844, syllabus. Alternatively, the Barbees assert that the cases upon which Nationwide relies are all distinguishable, and they argue that *Kraly*, 69 Ohio St.3d 627, 635 N.E.2d 323, is the appropriate precedent.

{¶ 29} We commence our analysis by first examining whether *Kraly* is dispositive. The Kralys' contract of insurance with State Farm Mutual Automobile Insurance Company provided uninsured/underinsured-motorist coverage. The policy required that a claim for uninsured-motorist coverage be brought within two years of the date of the accident. Id. at 629.

{¶ 30} The Kralys were injured in an automobile accident by an insured tortfeasor. Id. at 629-630. The Kralys filed suit against the tortfeasor within two years of the date of the accident. Id. at 630. However, shortly before the end of the policy's two-year limitation period, the Kralys were notified that the tortfeasor's insurance carrier was insolvent. Id. Consequently, the Kralys amended their complaint, pursuant to Civ.R. 15(C) ("relation back of amendments"), to include a claim against State Farm for uninsured-motorist coverage. But the amendment did not occur until after the expiration of the two-year limitation period.

{¶ 31} The trial court granted summary judgment in favor of State Farm, holding that the Kralys' claim for uninsured-motorist benefits was not commenced within two years of the date of the accident. Reversing, this court held that a contractual period of limitations is per se unreasonable if the time allotted for filing suit "expires before or shortly after the accrual of a right of action for [uninsured-motorist] coverage." *Kraly,* 69 Ohio St.3d 627, 635 N.E.2d 323,

paragraph four of the syllabus. The court reasoned that the Kralys' claim for uninsured-motorist benefits did not accrue until the date they received notice that the tortfeasor's insurance company was insolvent. Id. at 634. Because only three and one-half months remained before the end of the contract-limitations period when the Kralys received the insolvency notice, the court determined that the time remaining for the Kralys to bring a claim for uninsured-motorist coverage was unreasonable. Id. at 635.

{¶ 32} Since *Kraly,* however, this court has repeatedly distinguished its holding on the facts. In *Ross v. Farmers Ins. Group. of Cos* (1998), 82 Ohio St.3d 281, 695 N.E.2d 732, Farmers argued, just as the Barbees do here, "that [the Rosses'] claims for underinsured motorist coverage did not accrue until they had settled with the tortfeasor, thereby exhausting the tortfeasor's available liability coverage." Id. at 285. Farmers relied on *Kraly* in support of its argument. Id.

{¶ 33} We found Farmers' argument unpersuasive and held that *Kraly* was "clearly distinguishable." We stated, "*Kraly* unarguably involved a unique factual situation, and this court accordingly fashioned a remedy based upon concepts of fairness and public policy. * * * An automobile liability insurance policy will typically require exhaustion of the proceeds of a tortfeasor's policy before the right to *payment* of underinsured motorist benefits will occur. However, the date that exhaustion of the tortfeasor's liability limits occurs is not determinative of the applicable law to a claim for underinsured motorist coverage." (Emphasis sic.) Id. at 287.

{¶ 34} We also distinguished *Kraly* in *Angel v. Reed*, 119 Ohio St.3d 73, 2008-Ohio-3193, 891 N.E.2d 1179. Teresa Angel was in an automobile accident with Eric Reed. The police report indicated that Reed was insured. Angel filed suit against Reed, and although she repeatedly tried to serve him with the complaint, she was unsuccessful. After the time for asserting an uninsured-

motorist claim with Angel's insurance carrier had expired, Angel learned that Reed had not had a valid automobile-insurance policy.

**{¶ 35}** Angel argued to this court that *Kraly* controlled the outcome of her case and therefore the period for filing suit did not begin to run until she discovered that Reed had been uninsured. Rejecting this argument, we held:

**{¶ 36}** "In that unique factual situation [of *Kraly*], we differentiated between the standard situation of an uninsured-motorist claim involving a tortfeasor with no insurance at the time of the accident and the situation in *Kraly*, in which an insured motorist subsequently became uninsured, for all practical purposes, due to the insurer's insolvency.

**{¶ 37}** "Unlike *Kraly*, this case presents a standard uninsured-motorist claim in which the tortfeasor was uninsured at the time of the accident. No subsequent event rendered Reed uninsured; he already was uninsured. Consistency with precedent requires the application of the unambiguous language in the Allstate policy. Appellee failed to make her uninsured-motorist claim within the limitations period designated in the Allstate policy." Id. at ¶ 18-19.

**{¶ 38}** The Barbees' reliance on *Kraly* is misplaced, just as it was in *Ross* and *Angel*, because the rationale of *Kraly* is not applicable here. In *Kraly*, a threshold question was the applicability of Civ.R. 15(C), a matter that is not implicated here. Similar to *Angel*, there was no event in the present case that changed the status of the estate's coverage. The limits of the estate's policy, $75,000, remained the same from the time of the accident through the announcement of the judgment by the federal court. We have repeatedly emphasized that *Kraly* is limited to the unique factual circumstances of that case—in which the insured tortfeasor was rendered uninsured due to the insolvency of his insurance carrier shortly before the claimant's own policy's time period for filing an uninsured-motorist claim was to expire. Moreover, we note that after *Kraly,* the General Assembly enacted the current version of R.C.

3937.18(H), effective October 31, 2001, authorizing a special time frame for bringing an uninsured/underinsured-motorist claim against an insolvent insurance carrier. Am.Sub.S.B. No. 97, 149 Ohio Laws, Part I, 779, 784, 791.

{¶ 39} However, as explained in *Ross*, an insured's *right to payment* of the underinsured-motorist benefits only upon exhaustion of the tortfeasor's policy is distinct from the accrual of the *claim itself* to underinsured-motorist benefits. "An automobile liability insurance policy will typically require exhaustion of the proceeds of a tortfeasor's policy before the right to *payment* [emphasis sic] of underinsured motorist benefits will occur. However, the date that exhaustion of the tortfeasor's liability limits occurs is not determinative of the applicable law to a *claim* [emphasis added] for underinsured motorist coverage." *Ross*, 82 Ohio St.3d at 287, 695 N.E.2d 732.

{¶ 40} In the case at bar, Nationwide's exhaustion provision states, "No payment will be made until the limits of all other liability insurance and bonds that apply have been exhausted by payments." The plain meaning is that the exhaustion of a tortfeasor's limits of liability is a condition that must be satisfied before an insured has a *right to receive payment* of underinsured-motorist benefits from his own insurer. It does not, however, impose exhaustion of the tortfeasor's insurance as a condition that must be satisfied before an insured can *file suit* against his insurer to establish his claim under the policy for underinsured-motorist benefits.

{¶ 41} Because the exhaustion clause does not affect when the insured may commence suit against his insurer for determination of underinsured-motorist benefits, no conflict exists among the exhaustion, compliance, and limitation provisions of the Barbees' policy with Nationwide so that an ambiguity is created. The plain meaning of the policy provisions is that an insured must file the action within three years of the date of the accident and, within that three-year period, fully comply with the terms and conditions of the policy, including, but not

limited to, protecting the insured's subrogation rights. Failure to fully comply with the terms and conditions of the policy and/or to file suit within three years of the date of the accident will bar the underinsured-motorist claim. The provision requiring exhaustion of all other liability insurance and bonds before payment of an underinsured-motorist claim provides only for the order, timing, and amount of payments under the underinsured-motorist coverage of the insured's policy and does not establish a condition precedent to filing an action to claim such benefits.

{¶ 42} Additional support for this conclusion is found in the following language of R.C. 3937.18(H): "Any policy of insurance * * * may * * * require[ ] that * * * each claim or suit for * * * underinsured motorist coverage * * * be made or brought within three years after the *date of the accident* * * * ." (Emphasis added.) The language "date of the accident" was chosen by the General Assembly after our decision in *Ross*. The General Assembly was aware that underinsured-motorist-coverage provisions routinely require exhaustion of the tortfeasor's limits of liability. If the General Assembly had wanted to run the three-year period from the date that liability limits are exhausted, rather than from the date of the accident, it could easily have drafted the statute to reflect this intention. It did not.

{¶ 43} Finally, the Barbees argue that unless this court holds that exhaustion of a tortfeasor's liability limits is a condition that must occur before an insured's claim accrues, there will be a flood of unnecessary cases onto the dockets of the courts.

{¶ 44} It appears, however, that filing within the three-year policy period from the date of the accident to preserve an insured's underinsured-motorist claim is an existing practice. Donley, for example, filed an underinsured-motorist claim against her insurer in Ohio before the federal suits were concluded. The Ohio trial court stayed the case pending the resolution of the federal suits. In many cases, counsel will likely be able to learn about a party's coverage through

discovery. Counsel's knowledge of the extent of injuries and damages sustained by the claimant will further determine whether an action for underinsured-motorist coverage must be asserted to preserve the policyholder's underinsured-motorist-coverage rights. And because the trial court can stay proceeding on the underinsured-motorist claim until the claims against the tortfeasor are resolved, there is little extra burden on the court's docket in preserving the insured's claim for underinsured-motorist coverage in this manner.

## IV. Conclusion

{¶ 45} A provision in an automobile insurance policy requiring an action for uninsured/underinsured-motorist coverage to be brought against the insurer by the policyholder within three years of the date of the accident is unambiguous and enforceable. The provision does not conflict with coexisting policy provisions that require the insured to fully comply with the policy terms before filing suit and that require the tortfeasor's insurance assets to be exhausted before payment by the policyholder's own insurer. Although exhaustion of the tortfeasor's liability limits is a condition precedent to an insured's right to payment, it is not a precondition to filing suit by the insured against his insurer within the limitation period.

{¶ 46} Accordingly, we reverse the judgment of the court of appeals that the three-year limitation provision was not enforceable because the Barbees' claim for underinsured-motorist coverage did not arise until all other liability insurance was exhausted. This cause is remanded to the trial court for further proceedings consistent with our decision herein.

Judgment reversed

and cause remanded.

O'CONNOR, C.J., and LUNDBERG STRATTON, O'DONNELL, and LANZINGER, JJ., concur.

PFEIFER and MCGEE BROWN, JJ., dissent.

_____

**PFEIFER, J., dissenting.**

{¶ 47} Insurance companies are extremely resourceful at collecting premiums and exceedingly reluctant to pay claims—even when an accident is known to them and the claim is meritorious. Today, this court aids and abets Nationwide Mutual Insurance Company in avoiding payment of one relatively modest claim while opening all insurance companies up to massive ongoing legal costs. It's all so unnecessary.

I

{¶ 48} The Barbees were injured in an automobile accident. Some were covered by insurance policies from Allstate, which has now settled all claims, and others were covered by Nationwide. Among the various misfortunes to befall the Barbees is that one of the people who caused the accident was an employee of the federal government. This circumstance caused the Barbees to file suit in federal court in Wisconsin, which—well, the majority opinion has ably recited the facts. Suffice it to say, the Barbees did not learn that they had an underinsured-motorist claim until almost three years after the accident. When the suit was filed, Nationwide was quick to point out that it could no longer be sued, based on the three-year limitations period in its insurance policy. Never mind that Nationwide had collected premiums for underinsured-motorist coverage, that it knew about the accident (having paid medical claims), that its insureds had suffered grievous injuries, or that it had written a policy that appeared to require the insured to establish that it needed underinsured-motorist coverage before asking for it. There was an opportunity to avoid coverage, and Nationwide snatched it.

{¶ 49} The insurance policy unequivocally contains a provision that states that Nationwide cannot be sued more than three years after the accident. Although the three-year limitation period is unambiguous, it is much less clear,

given other provisions in the policy and the circumstances of this case, when the three years should start to run.

{¶ 50} The policy contains a compliance clause, which provides that suit cannot be filed unless all provisions of the policy have been complied with. Among the provisions to be complied with is an exhaustion provision, which states that Nationwide is not required to pay until the Barbees have exhausted all other sources of payment. Nationwide, not unreasonably, states that the exhaustion provision does not prohibit the insured from filing suit; it merely allows the insurance company to defer payment. The Barbees, not unreasonably, assert that they shouldn't be required to file suit to collect something that they might not be entitled to. If the Wisconsin lawsuit had gone differently—if, for example, the federal employee had been found 51 percent liable, instead of 30 percent liable—then all damages would have been paid by the federal government, and no suit for underinsured-motorist coverage would have been warranted.

{¶ 51} At a minimum, I consider the interplay of the various insurance-policy provisions ambiguous. Nationwide's argument makes sense, from a certain perspective, and so does the Barbees'. In such a situation, this court has long deferred to a venerable principle: "Language in a contract of insurance reasonably susceptible of more than one meaning will be construed liberally in favor of the insured and strictly against the insurer." *Faruque v. Provident Life & Acc. Ins. Co. (*1987), 31 Ohio St.3d 34, 31 OBR 83, 508 N.E.2d 949, syllabus. Recently, citing *Buckeye Union Ins. Co. v. Price* (1974), 39 Ohio St.2d 95, 68 O.O.2d 56, 313 N.E.2d 844, we stated that "insofar as the parties have offered their own separate interpretations of the language of the policy, both of them plausible, we must resolve any uncertainty in favor of the insured." *Neal-Pettit v. Lahman*, 125 Ohio St.3d 327, 2010-Ohio-1829, 928 N.E.2d 421, ¶ 17.

**{¶ 52}** Nationwide and this court see no ambiguity. To them, the issue is clear: the Barbees should have filed suit for underinsured-motorist coverage even though they did not know whether they would be underinsured. Nationwide and this court point to another person injured in the same accident, who filed for underinsured-motorist coverage before knowing whether she was entitled to it. This observation seems an odd way to determine that a policy is unambiguous: to point to someone who acted differently. In fact, this dichotomy actually seems like proof of how ambiguous the policy is. One party did one thing, another party did something else. Two lower courts read the policy language and decided that the policy is ambiguous. The seven justices on this court read the policy language and, although the court is divided, decide that the policy is not ambiguous. Such circumstances—different people, all schooled in the law and the language of insurance policies, reading the same policy language and reaching different conclusions—amply illustrate the very definition of ambiguity.

II

**{¶ 53}** Unfortunately, this case has far-reaching ramifications. Ultimately, Nationwide and this court have determined, as a matter of public policy, that it is better for insureds to file suit for underinsured-motorist coverage in all circumstances than to file only when underinsured status is known. Nationwide and this court have concluded that the trial court can simply stay the suit for underinsured-motorist coverage until after damages are assessed and it can be determined whether underinsured-motorist coverage is applicable. Never mind the waste of time and effort for everyone involved. Apparently, the court's time is of no consequence. A far better practice would be to toll the limitations period relevant to an underinsured-motorist claim until it is known whether that coverage is needed. *See Kraly v. Vannewkirk* (1994), 69 Ohio St.3d 627, 635 N.E.2d 323, paragraph three of the syllabus.

**{¶ 54}** This case is a minor win for Nationwide, which avoids paying several thousand dollars on an otherwise meritorious claim. This case is a significant loss for the Barbees, all of whom were physically injured and who aren't able to collect the full extent of their damages from the tortfeasor or—even though they purposely purchased underinsured-motorist coverage for just such an eventuality—from their insurance company. And this case is an unmitigated boon for insurance-company lawyers, whose jobs are now a bit more secure. They will now be required to answer, however perfunctorily, complaints for underinsured-motorist coverage in almost every motor-vehicle accident that occurs in Ohio. According to the Ohio Department of Public Safety, in 2009, there were 298,646 motor-vehicle accidents in Ohio. http://www.publicsafety.ohio.gov/links/2009CrashFacts.pdf. I am reminded of a Scottish proverb: penny wise and pound foolish. See Edward Topsell, The Historie of Foure-footed Beastes (1607).

III

**{¶ 55}** I conclude that the interplay of the various insurance-policy provisions in this case is ambiguous, even though none of the provisions are ambiguous when read separately. As this court has always done, I would resolve the ambiguity in favor of the insured, as the trial court and the court of appeals properly did. I would affirm the decision of the court of appeals. I dissent.

––––––––––––––––––

Chamberlain Law Firm Co., L.P.A., and Henry W. Chamberlain; and Paul W. Flowers Co., L.P.A., and Paul W. Flowers, for appellees.

Joyce V. Kimbler, for appellant.

Elk & Elk Co., L.P.A., Peter D. Traska, and Ryan M. Harrell, urging affirmance for amicus curiae, Ohio Association for Justice.

––––––––––––––––––