Pfeifer, J.,
dissenting.
{¶ 47} Insurance companies are extremely resourceful at collecting premiums and exceedingly reluctant to pay claims — even when an accident is known to them and the claim is meritorious. Today, this court aids and abets Nationwide Mutual Insurance Company in avoiding payment of one relatively modest claim while opening all insurance companies up to massive ongoing legal costs. It’s all so unnecessary.
I
{¶ 48} The Barbees were injured in an automobile accident. Some were covered by insurance policies from Allstate, which has now settled all claims, and others were covered by Nationwide. Among the various misfortunes to befall the Barbees is that one of the people who caused the accident was an employee of the federal government. This circumstance caused the Barbees to file suit in federal court in Wisconsin, which — well, the majority opinion has ably recited the facts. Suffice it to say, the Barbees did not learn that they had an underinsuredmotorist claim until almost three years after the accident. When the suit was filed, Nationwide was quick to point out that it could no longer be sued, based on the three-year limitations period in its insurance policy. Never mind that Nationwide had collected premiums for underinsured-motorist coverage, that it knew about the accident (having paid medical claims), that its insureds had suffered grievous injuries, or that it had written a policy that appeared to require the insured to establish that it needed underinsured-motorist coverage before asking for it. There was an opportunity to avoid coverage, and Nationwide snatched it.
*106 {¶ 49} The insurance policy unequivocally contains a provision that states that Nationwide cannot be sued more than three years after the accident. Although the three-year limitation period is unambiguous, it is much less clear, given other provisions in the policy and the circumstances of this case, when the three years should start to run.
{¶ 50} The policy contains a compliance clause, which provides that suit cannot be filed unless all provisions of the policy have been complied with. Among the provisions to be complied with is an exhaustion provision, which states that Nationwide is not required to pay until the Barbees have exhausted all other sources of payment. Nationwide, not unreasonably, states that the exhaustion provision does not prohibit the insured from filing suit; it merely allows the insurance company to defer payment. The Barbees, not unreasonably, assert that they shouldn’t be required to file suit to collect something that they might not be entitled to. If the Wisconsin lawsuit had gone differently — if, for example, the federal employee had been found 51 percent liable, instead of 30 percent liable — then all damages would have been paid by the federal government, and no suit for underinsured-motorist coverage would have been warranted.
{¶ 51} At a minimum, I consider the interplay of the various insurance-policy provisions ambiguous. Nationwide’s argument makes sense, from a certain perspective, and so does the Barbees’. In such a situation, this court has long deferred to a venerable principle: “Language in a contract of insurance reasonably susceptible of more than one meaning will be construed liberally in favor of the insured and strictly against the insurer.” Faruque v. Provident Life & Acc. Ins. Co. (1987), 31 Ohio St.3d 34, 31 OBR 83, 508 N.E.2d 949, syllabus. Recently, citing Buckeye Union Ins. Co. v. Price (1974), 39 Ohio St.2d 95, 68 O.O.2d 56, 313 N.E.2d 844, we stated that “insofar as the parties have offered their own separate interpretations of the language of the policy, both of them plausible, we must resolve any uncertainty in favor of the insured.” Neal-Pettit v. Lahman, 125 Ohio St.3d 327, 2010-Ohio-1829, 928 N.E.2d 421, ¶ 17.
{¶ 52} Nationwide and this court see no ambiguity. To them, the issue is clear: the Barbees should have filed suit for underinsured-motorist coverage even though they did not know whether they would be underinsured. Nationwide and this court point to another person injured in the same accident, who filed for underinsured-motorist coverage before knowing whether she was entitled to it. This observation seems an odd way to determine that a policy is unambiguous: to point to someone who acted differently. In fact, this dichotomy actually seems like proof of how ambiguous the policy is. One party did one thing, another party did something else. Two lower courts read the policy language and decided that the policy is ambiguous. The seven justices on this court read the policy language and, although the court is divided, decide that the policy is not *107 ambiguous. Such circumstances — different people, all schooled in the law and the language of insurance policies, reading the same policy language and reaching different conclusions — amply illustrate the very definition of ambiguity.
II
{¶ 53} Unfortunately, this case has far-reaching ramifications. Ultimately, Nationwide and this court have determined, as a matter of public policy, that it is better for insureds to file suit for underinsured-motorist coverage in all circumstances than to file only when underinsured status is known. Nationwide and this court have concluded that the trial court can simply stay the suit for underinsured-motorist coverage until after damages are assessed and it can be determined whether underinsured-motorist coverage is applicable. Never mind the waste of time and effort for everyone involved. Apparently, the court’s time is of no consequence. A far better practice would be to toll the limitations period relevant to an underinsured-motorist claim until it is known whether that coverage is needed. See Kraly v. Vannewkirk (1994), 69 Ohio St.3d 627, 635 N.E.2d 323, paragraph three of the syllabus.
{¶ 54} This case is a minor win for Nationwide, which avoids paying several thousand dollars on an otherwise meritorious claim. This case is a significant loss for the Barbees, all of whom were physically injured and who aren’t able to collect the full extent of their damages from the tortfeasor or — even though they purposely purchased underinsured-motorist coverage for just such an eventuality — from their insurance company. And this case is an unmitigated boon for insurance-company lawyers, whose jobs are now a bit more secure. They will now be required to answer, however perfunctorily, complaints for underinsuredmotorist coverage in almost every motor-vehicle accident that occurs in Ohio. According to the Ohio Department of Public Safety, in 2009, there were 298,646 motor-vehicle accidents in Ohio. http://www.publicsafety.ohio.gov/links/2009Crash Facts.pdf. I am reminded of a Scottish proverb: penny wise and pound foolish. See Edward Topsell, The Historie of Foure-footed Beastes (1607).
III
{¶ 55} I conclude that the interplay of the various insurance-policy provisions in this case is ambiguous, even though none of the provisions are ambiguous when read separately. As this court has always done, I would resolve the ambiguity in *108 favor of the insured, as the trial court and the court of appeals properly did. I would affirm the decision of the court of appeals. I dissent.
Chamberlain Law Firm Co., L.P.A., and Henry W. Chamberlain; and Paul W. Flowers Co., L.P.A., and Paul W. Flowers, for appellees.
Joyce V. Kimbler, for appellant.
Elk & Elk Co., L.P.A., Peter D. Traska, and Ryan M. Harrell, urging affirmance for amicus curiae, Ohio Association for Justice.